IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DOMINIC WILLIAMS,

     Petitioner,

v.                                        No. 1:20-cv-01177-JDB-jay
                                             Re: 1:15-cr-10015-JDB-1

UNITED STATES OF AMERICA,

     Respondent.

ORDER DENYING AMENDED PETITION AND SUPPLEMENTAL CLAIM,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

The Petitioner,[1] Dominic Williams, has filed a pro se amended motion to vacate, set aside, or correct his sentence (the "Amended Petition") pursuant to 28 U.S.C. § 2255, as well as an additional claim (the "Supplemental Claim" or "*Taylor* Claim"). (Docket Entry ("D.E.") 4, 14.)[2] For the following reasons, the Amended Petition and the Supplemental Claim are DENIED.

BACKGROUND

In 2015, a federal grand jury charged Williams with attempted bank robbery by force or violence in violation of 18 U.S.C. §§ 2113(a), (d), (e) (Count 1). (*United States v. Williams*, No. 1:15-cr-10015-JDB-1 (W.D. Tenn.) ("No. 1:15-cr-10015-JDB-1") D.E. 11.) That statute provides that,

> [w]hoever, *in committing, or in attempting to commit,* any offense defined in subsections (a) and (b) of this section, *assaults* any person, or *puts in jeopardy the*

---

[1] The Court will refer to Williams as "the Defendant" in its discussion of the underlying criminal case.

[2] Unless otherwise indicated, record citations are to documents filed in the present case.

*life of any person* by the use of a dangerous weapon or device,[3] shall be fined under this title or imprisoned not more than twenty-five years, or both.

\* \* \*

Whoever*, in committing any offense defined in this section,* or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself from arrest or confinement for such offense, *kills any person*, or *forces any person to accompany him without the consent of such person*, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. §§ 2113(d)-(e) (emphasis added).  The indictment also charged the Defendant with discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3). Attorney David Camp was appointed to represent Williams.  (*Id.*, D.E. 38.)

The charges were based on the following offense conduct:

On the morning of Wednesday, March 18, 2015, Williams hid in the carport outside the Humboldt, Tennessee residence of Pamela Janeice Frisbee ("Frisbee"). When Frisbee entered the carport, Williams leaped out, accosted her with a .40 caliber Glock pistol, forced her into the car, and made her drive him to the bank where she worked as a manager. Once inside the bank, Williams demanded Frisbee give him money from the teller windows and from various vaults, saying he would kill her if the police came. Williams grew increasingly agitated as Frisbee told him she could not access the vaults without an authorized second employee. Finally, Williams said that if Frisbee could not get him access to the money, "[t]hen you're gonna die today."

Williams proceeded to shoot Frisbee from about two feet away; the bullet hit her in the upper left part of her chest. Williams then shot Frisbee again and she fell to the floor.

*United States v. Williams*, 737 F. App'x 235, 236 (6th Cir. 2018).  The Defendant fled but was captured by law enforcement officers the same day.  *Id.*

---

[3] Section 2113(d)'s phrase "by the use of a dangerous weapon or device" modifies both "assaults" and "puts in jeopardy."  *Simpson v. United States*, 435 U.S. 6, 11 n.6 (1978).

On August 10, 2016, Williams pleaded guilty to all three counts pursuant to a plea agreement with the Government.  (No. 1:15-cr-10015-JDB-1, D.E. 54, 55.)  In anticipation of sentencing, the United States Probation Office prepared a presentence report (the "PSR").  (*Id.*, D.E. 68.)  The PSR calculated the Defendant's advisory incarceration range as 444 to 525 months, pursuant to the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G.").  (*Id.*, D.E. 68 at ¶ 92.)  The range was arrived at, in part, through the application of a cross-reference for the Defendant's having "used the firearm cited in the offense of conviction to commit the offense of Assault with Attempt to Commit Murder; Attempted Murder of" the victim, enhancement of the offense level "since the victim sustained permanent or life-threatening bodily injury," and a determination that Williams was a "career offender."  (*Id.*, D.E. 68 at ¶¶ 31, 32, 38, 92.)  The PSR advised that the Defendant was a career offender because the offenses to which he pleaded guilty were committed subsequent to his sustaining at least two felony convictions for either a controlled substance offense or a crime of violence.  (*Id.*, D.E. 68 at ¶ 38 (citing U.S.S.G. § 4B1.1).)

Defense counsel subsequently filed a position paper in response to the PSR.  (*Id.*, D.E. 69.)  He presented numerous challenges to the contents of that document, including that "[t]here has been no evidence provided to support [the] statement that [the victim] sustained 'permanent or life threatening bodily injury,'" and that the cross-reference was improper because "the reference to assault with attempt to commit murder is not an identifiable criminal charge under the laws of the State of Tennessee . . . ."  (*Id.*, D.E. 69 at ¶¶ 10, 11.)  In a second addendum to the PSR, the probation office amended the PSR in some respects in response to counsel's objections.  (*Id.*, D.E. 70.)  As to counsel's challenge to the enhancement for permanent or life-threatening

injuries and the cross-reference for attempted first degree murder, the addendum advised that the record supported application of those provisions.

At the sentencing hearing, defense counsel reiterated most of his objections to the PSR's findings.  (*Id.*, D.E. 77 at PageID 189-201.)  In particular, he argued at length that the cross-reference did not apply because the Defendant accidentally shot the victim and did not say to her that he would kill her.  Counsel further argued that there was insufficient proof that the victim suffered permanent or life-threatening injuries.  The Government called the victim as a witness to provide an impact statement and to testify in support of the enhancement for permanent or life-threatening injuries and the cross-reference for attempted first degree murder.  (*Id.*, D.E. 77 at PageID 224-40.)  After hearing the testimony, the parties' arguments, and the Defendant's statement to the Court, the undersigned held that the enhancement and the cross-reference applied and that the Defendant was a career offender.  The undersigned applied a three-point reduction in offense level for Williams' acceptance of responsibility and found that the resulting Guidelines' imprisonment range was 444 to 525 months.  Upon consideration of the advisory range and the § 3553 sentencing factors,[4] the undersigned sentenced Williams to concurrent terms of imprisonment of 324 months on Count 1 and 120 months on Count 3.  A term of 120 months on Count 2, to be served consecutively to Counts 1 and 3, was also imposed.  (*Id.*, D.E.

---

[4] Pursuant to § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

4

77 at PageID 269.)  The effective sentence was 444 months' imprisonment, which was at the bottom of the Guidelines range.  Five years of supervised release was ordered.  (*Id.*, D.E. 77 at PageID 270.)

Counsel continued his representation of Williams on appeal (the "First Appeal").  He "challenge[d] the . . . application of a four-level enhancement to the Guidelines calculation for causing 'permanent or life-threatening bodily injury' in the shooting victim."  *Williams*, 737 F. App'x at 238.  Counsel argued, in part, that the enhancement should not have been applied "without 'expert opinion establishing a foundation as to causation, diagnosis, prognosis or permanency.'"  *Id.*  Relying on *Dean v. United States*, 581 U.S. 62 (2017), counsel further contended that this Court "erred by failing to take into account the mandatory consecutive 'additional' sentence for Count 2 under 18 U.S.C. § 924(c) when determining the sentences for Counts 1 and 3."  *Id.* at 241.

The Sixth Circuit rejected the first argument, holding that the Government was not required to present expert medical opinion and that this Court properly considered the victim's testimony as to the nature and extent of her injuries.  *Id.* at 238-41.  It therefore affirmed "the application of the 'life-threatening injury' guideline enhancement[.]"  *Id.* at 243.  The court agreed with the Defendant, however, on his *Dean* argument.  *Id.* at 241-43.  The case was therefore remanded "for resentencing in light of *Dean*."  *Id.* at 243.

Upon remand, the undersigned "addressed *Dean* and reconsidered Williams's sentence." (No. 1:15-cr-10015-JDB-1, D.E. 95 at PageID 383.)  Upon finding "that the sentence previously imposed was the 'appropriate and correct sentence,'" the undersigned resentenced the Defendant to the same bottom-of-the-Guidelines total term of imprisonment of 444 months.  (*Id.*, D.E. 95 at PageID 383; *id.*, D.E. 89.)

Attorney Camp appealed on Williams' behalf once again (the "Second Appeal"), "argu[ing] that the district court erred at resentencing by failing to properly consider the ruling in *Dean*." (*Id.*, D.E. 95 at PageID 383.)  After briefing was completed but before the Sixth Circuit issued a decision, counsel "filed a letter requesting additional briefing to argue that [the] § 924(c) conviction is no longer valid" in light of the Supreme Court's June 24, 2019, decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  (*Id.*)  In an opinion dated September 5, 2019, the Sixth Circuit rejected the Defendant's *Dean* argument.  (*Id.*, D.E. 95 at PageID 383-87.)  The court also denied the Defendant's "request for additional briefing in light of *Davis*," finding that the "decision in *Davis* does not affect [his] appeal." (*Id.*, D.E. 95 at PageID 387.)

DISCUSSION

Williams filed his original § 2255 petition on August 17, 2020.  (D.E. 1.)  On September 28, 2020, he submitted the Amended Petition.  (D.E. 4.)  In Claim 1, he asserts that his firearm conviction is no longer valid in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  He further posits that counsel rendered ineffective assistance by failing to raise a *Rehaif* challenge in the second appeal (Claim 2), hire experts at sentencing (Claim 3), object to the career offender enhancement (Claim 4), and challenge the firearm conviction on appeal in light of the Supreme Court's decision in *Davis* (Claim 5).[5]

On February 2, 2021, the Respondent, United States of America, filed a response (the "Response") in opposition to the Amended Petition.  (D.E. 11.)  The Government argues therein that Claim 1 is procedurally defaulted and without merit, and that the remaining claims are without foundation.

---

[5] The Court has renumbered the claims for ease of discussion.

Petitioner filed a reply (the "Reply") on April 6, 2021.  (D.E. 12.)  He insists that the procedural default of Claim 1 should be excused and that all of his claims have merit.[6]

On July 11, 2022, the inmate submitted a motion to amend the Amended Petition to add a claim challenging his conviction for attempted bank robbery on the basis of *United States v. Taylor*, 142 S. Ct. 2015 (2022).  (D.E. 14.)  The Court granted the motion and directed Respondent to file a supplemental response addressing the *Taylor* Claim.  (D.E. 17.)  Before the Government filed that document, however, Petitioner submitted a motion seeking appointment of counsel to help him prosecute the claim.  (D.E. 22.)  Respondent then filed its supplemental response (D.E. 23) and the inmate filed a supplemental reply (D.E. 24).  By order dated March 22, 2023, the Court found good cause for appointing counsel and ordered Williams to file an in forma pauperis application to substantiate that he is indigent.  (D.E. 26.)  The motion for counsel was taken under advisement pending Petitioner's submission of the application.  Upon receipt of the inmate's documentation, the Court granted the motion for counsel (D.E. 28) and appointed an attorney to represent Petitioner (D.E. 29).  Williams was subsequently ordered to file a brief through counsel in support of the *Taylor* claim.  (D.E. 33.)  Williams submitted his counseled brief on June 7, 2023 (the "Memorandum in Support") (D.E. 36), and the Government thereafter filed a responsive brief (the "Memorandum in Opposition") (D.E. 39).

---

[6] In addition to reiterating his arguments in support of his claims, Petitioner asserts in the Reply some additional ineffective-assistance grounds.  Because those additional issues were raised for the first time in the Reply, they will not be considered.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

On November 15, 2021, seven months after filing the Reply, Petitioner submitted a document styled "Letter Brief of Clarification and Request for Consideration Prior to Ruling Upon Movant[']s Motion Pursuant to USC 2255."  (D.E. 13.)  He requests therein that the Court "recognize that his claim of counsel[']s ineffectiveness in failing to object to the 'career offender' enhancement, includes being 'classified' as a career offender under the statutory procedures of 21 USC 851(a)(a) and (b)."  (*Id.* at PageID 98.)  The argument is a new claim that was not asserted in the Amended Petition.  It is therefore not properly before the Court.

I.      Section 2255 Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).   To establish an error of constitutional magnitude, a petitioner "must demonstrate the existence of an error . . . which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).   For a petitioner "to obtain relief under § 2255 on the basis of a non-constitutional error, the record must reflect a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *McWhorter v. United States*, No. 97-6118, 1998 WL 399620, at *1 (6th Cir. June 11, 1998) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993) (per curiam)).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding.  *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).   Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).   *Id.* at 966.   To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."   *Strickland*, 466 U.S. at 687.   "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair [proceeding] whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

*Strickland*'s two-part test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). A petitioner meets the deficient performance prong by showing that "his appellate counsel made an objectively unreasonable decision by choosing to raise other issues instead of" the challenged issue, "meaning [the challenged] issue 'was clearly stronger than issues that counsel did present.'" *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Robbins*, 528 U.S. at 285, 288). The prejudice prong requires a petitioner to "demonstrate 'a reasonable probability that, but for his counsel's unreasonable

failure to' raise th[e] issue on appeal, 'he would have prevailed.'" *Id.* (quoting *Robbins,* 528 U.S. at 285).

II.    <u>Claims 1 and 2</u>

Petitioner asserts that the decision in *Rehaif* rendered the indictment in his criminal case invalid.  He insists, specifically, that the "indictment failed to charge a cognizable federal offense, thereby depriving the Court of jurisdiction over his case."  (D.E. 4 at PageID 31.)  The inmate further maintains that his guilty plea was not knowing and voluntary in light of *Rehaif*. The Government argues that Claim 1 is procedurally defaulted because Petitioner failed to raise the arguments on direct appeal.  Respondent alternatively contends that the claim is without merit.  In the Reply, Petitioner alleges that counsel's failure to raise a *Rehaif* challenge in the Second Appeal is cause to excuse the procedural default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (constitutionally ineffective assistance of counsel may constitute cause to excuse a procedural default).

In Claim 2, Williams asserts, as a standalone claim, that counsel provided ineffective assistance by failing to "bring [the *Rehaif*] issue . . . on direct appeal."  (D.E. 4 at PageID 23.) The Government argues that the claim is without merit.

As relevant here, § 922(g) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g).  In *Rehaif*, the Supreme Court held that, to prove a § 922(g) violation, "the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."  *Rehaif*, 139 S. Ct. at 2194.

The holding in *Rehaif* has implications for charging documents.  As a general matter, "[a]n indictment must allege all the elements charged to 'ensure that an accused is reasonably informed of the charge against him so that he can prepare a defense.'"  *United States v. Garrison*, 839 F. App'x 968, 982 (6th Cir. 2020) (quoting *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)), *cert. denied*, 141 S. Ct. 2866 (2021).  Therefore, after *Rehaif*, an "indictment . . . now must include that a defendant charged under § 922(g) *knew* of his prohibited status."  *Id.* at 983.

Similarly, when a defendant pleads guilty to violating § 922(g), the court's plea colloquy must account for *Rehaif*'s holding.  It is fundamental that a guilty plea is not voluntary and knowing if "the defendant [does not] understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty."  *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)).  Therefore, post-*Rehaif*, a defendant who pleads guilty to being a felon in possession of a firearm must be advised by the district court during the plea colloquy of the knowledge-of-status element.  *See Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) ("*Rehaif* error[] occurred" when "the District Court failed to advise [the defendant] during the plea colloquy that, if he went to trial, a jury would have to find that he knew he was a felon.").

At the time Petitioner was resentenced in October 2018, "caselaw did not require *Rehaif*'s knowledge element[.]"  *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citing *United States v. Conley*, 802 F. App'x 919, 922 (6th Cir. 2020)).  *Rehaif* was issued in June 2019, which was after briefing in Williams' Second Appeal was completed, but three months before the Sixth Circuit denied relief.  Even assuming the court would have allowed appellate counsel to amend his brief to challenge the indictment and the guilty plea on the basis of *Rehaif*, the Sixth

Circuit would have reviewed any alleged *Rehaif* error under plain error review. *See United States v. Raymore*, 965 F.3d 475, 485-87 (6th Cir. 2020). Petitioner has not shown a reasonable probability that he could have established plain error.

First, an argument that the indictment was fatally defective because it failed to charge the knowledge-of-status element would have been unavailing. The Sixth Circuit has "recently joined several other circuits in holding that the omission of the knowledge-of-status element required by *Rehaif* does not deprive the district court of jurisdiction." *Brown v. United States*, No. 20-3632, 2021 WL 2470311, at *2 (6th Cir. May 21, 2021) (citing *United States v. Hobbs*, 953 F.3d 853, 856-57 (6th Cir. 2020)). In addition, "the indictment put [Williams] on sufficient notice that he could have raised an objection to the omission of the element." *Id.* (citing *United States v. Ward*, 957 F.3d 691, 694-95 (6th Cir. 2020)).

As for an argument that the guilty plea was unknowing and involuntary, that too would have likely failed plain error review had counsel raised the issue on appeal.[7] Under such review, a defendant making the argument must "show that, but for the *Rehaif* error during the plea colloquy, there is a reasonable probability that he would have gone to trial rather than plead guilty." *Greer*, 141 S. Ct. at 2098. A defendant does not meet that standard if he fails to represent that he "would have presented evidence in the District Court that he did not in fact know he was a felon," and where there is "clear evidence in the record from which to infer that the defendant knew he was a felon . . . ." *Id.*; *Ward*, 957 F.3d at 695. Williams has not pointed to any evidence he believes he could have introduced at trial showing that he lacked such knowledge. In addition, the record in the underlying criminal case contains clear evidence that he knew he was a felon. Firstly, the Defendant pleaded guilty to having previously been

---

[7] Petitioner contends that a *Rehaif* error during a plea colloquy is a structural error. The Supreme Court recently rejected that argument. *See Greer*, 141 S. Ct. at 2100.

convicted of a felony. (No. 1:15-cr-10015-JDB-1, D.E. 54, 55.) That "plea . . . admission . . . strongly suggests his knowledge of his status." *Brown*, 2021 WL 2470311, at *2 (citing *Raymore*, 965 F.3d at 486). Secondly, the PSR advised that the Defendant was a convicted felon at the time he possessed the gun, having accumulated the following convictions for which he received custodial sentences exceeding one year: kidnapping (5 years), three counts of imprisonment (3 years concurrent), second degree burglary (3 years), and possession of cocaine base for sale (11 years). (No. 1:15-cr-10015-JDB-1, D.E. 68 at ¶¶ 19, 47, 48.) Defendant did not dispute those findings. At bottom, he knew he was a felon at the time he possessed the firearm, and the Government would have had no problem proving that fact. There is therefore no reasonable probability that Petitioner would have proceeded to trial had he known of the prosecution's burden to establish the knowledge-of-status element.

Because Petitioner would not have likely prevailed in the Second Appeal on *Rehaif* challenges to the indictment and his guilty plea, counsel did not perform deficiently by choosing to forego those futile arguments in favor of the issue he did raise. Williams also was not prejudiced by counsel's failure to present the meritless *Rehaif* issues. *See Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016) (counsel's "failure to make futile objections does not constitute ineffective assistance."). As counsel did not render ineffective assistance, Petitioner has failed to establish cause to excuse his procedural default of Claim 1.

But even if the Claim 1 was properly before the Court, it would be denied because it is without merit. To establish an error of constitutional magnitude, a petitioner "must demonstrate the existence of an error . . . which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin*, 330 F.3d at 736 (citing *Brecht*, 507 U.S. at 637). As discussed above, the Court was not deprived of jurisdiction on account of the indictment's failure

to include the knowledge-of-status element.  The error in the indictment therefore did not have a substantial and injurious effect on the proceedings.  Nor did the error that occurred during the plea colloquy.  As discussed above, Petitioner has not identified any evidence he could have submitted to the jury to suggest that he did not know of his felony status.  And, the record in his criminal case shows that he did know he was a felon at the time he possessed the firearm.

Accordingly, Claim 1 is procedurally defaulted and the default is unexcused.  The claim is therefore DISMISSED.  Alternatively, Claim 1 is without merit.  Claim 2 is also without merit, as the Court has already determined that counsel did not render ineffective assistance by failing to raise the *Rehaif* arguments on appeal.  Claim 2 is therefore DENIED.

III.   Claim 3

In Claim 3, Petitioner asserts that counsel was ineffective at sentencing for failing to procure experts to testify in opposition to the application of the offense-level enhancement for the victim's permanent or life-threatening injuries (Claim 3A) and the first-degree murder cross-reference (Claim 3B).  Respondent argues that there is no merit to either subclaim.

a.   Enhancement for Permanent or Life-threatening Injuries

"The Guidelines provide for a four-level increase in a defendant's offense level where the victim sustains 'permanent or life-threatening bodily injury.'"  *Williams*, 737 F. App'x at 239 (quoting U.S.S.G. § 2A2.1(b)(1)(A)).  "Such an injury is defined as one 'involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent.'"  *Id.* (quoting U.S.S.G. § 1B1.1, Application Note 1(J)).

At the sentencing hearing, the victim testified that Williams took his first shot at her "from about two feet away[.]"  *Id.* at  236.  The bullet was "prevented . . . from penetrating her

chest" by a necklace, but the bullet "broke her sternum and damaged her back, neck, and right lung." *Id.* "The second bullet struck her right shoulder, penetrated her chest, and exited the left side of her body above her heart. The second bullet caused irreparable muscle and nerve damage to her right arm." *Id.* The victim, who was "bleeding profusely," called 911 and was airlifted to a Memphis hospital. *Id.* She "subsequently underwent six months of physical therapy for her arms, neck, and back," was rated partially disabled for the injury to her arm, "experienced ongoing shoulder and chest pain; and had trouble lifting objects." *Id.* She was also "[d]iagnosed with post-traumatic stress disorder [and] experienced bad dreams, difficulty sleeping, and hair loss." *Id.*; (*see also* No. 1:15-cr-10015-JDB-1, D.E. 77 at PageID 224-45.)   Based on the victim's testimony, the Court found that she "did sustain permanent and life threatening bodily injury[.]" (No. 1:15-cr-10015-JDB-1, D.E. 77 at PageID 264.)

On appeal, counsel argued that "the district court erred in applying a four-level enhancement for permanent or life-threatening injury to the victim without the introduction of expert medical evidence[.]" *Williams*, 737 F. App'x at 236. The Sixth Circuit rejected the argument, holding there is no requirement that the prosecution must produce a medical expert to testify in support of application of the offense-level enhancement. *Id.* at 240-41. The court determined that "[p]recedent firmly supports the authority of a sentencing court to make [the] determination . . . based on a preponderance of the evidence," and found that the victim's testimony was sufficient to establish that she suffered permanent or life-threatening injuries. *Id.* at 241.

Williams has not established that counsel was ineffective at sentencing regarding the enhancement for permanent or life-threatening bodily injury. As the Sixth Circuit held, there is no requirement that a sentencing court must hear from medical experts in order to determine if

the victim sustained permanent or life-threatening injuries.  At Petitioner's sentencing hearing, the victim described her injuries and their impact.  Defense counsel vigorously cross-examined her, pressing her regarding the fact that she was in the hospital for only one day following the attack, that she had not yet received a settlement based on her permanent partial disability rating, that she eventually went back to work, and that she was not currently receiving medical care. (No. 1:15-cr-10015-JDB-1, D.E. 77 at PageID 240-44.)  The Court assessed the entirety of the victim's testimony and concluded that she was credible.  Petitioner does not dispute that he shot the victim twice at close range.  He also does not identify any portions of the victim's testimony he believes a medical expert could have refuted.  He has therefore failed to demonstrate that counsel performed deficiently by failing to seek expert testimony or that counsel's conduct prejudiced him.  Claim 3A is DENIED.

### b.  Enhancement for Attempted Murder

At Williams' sentencing hearing, the Court applied a cross-reference to attempted first-degree murder under § 2A2.1(a) of the Guidelines.  That provision provides for a base offense level of "33, if the object of the offense would have constituted first degree murder[.]"  U.S.S.G. § 2A2.1.  The Court found "that the actions of Mr. Williams . . . were certainly malicious, were intended to kill the victim in this case."  (No. 1:15-cr-10015-JDB-1, D.E. 77 at PageID 263.)  In so finding, the Court considered the victim's testimony and also the fact that there were "at least two shots."  (*Id.*, D.E. 77 at PageID 263.)  Petitioner now asserts that counsel rendered ineffective assistance by failing to obtain a firearm examiner to corroborate his contention that the firearm went off accidentally and he did not mean to harm the victim.

Williams has failed to show that counsel was ineffective for failing to hire a firearms examiner.  For one thing, he offers nothing to suggest that an examination would have yielded

probative results in his favor.  He also does not dispute that he shot the victim twice.  Although he insists that a surveillance video "contradicts the testimony of" the victim (D.E. 12 at PageID 80), he does not support that general allegation with specific allegations about what the video would have shown that would have called the victim's testimony into question.  On this record, and without specific allegations to support the general allegation that the gun fired accidentally, the sub-claim is unsupportable.  Claim 3B is DENIED.

IV.   <u>Claim 4</u>

Williams maintains that counsel rendered ineffective assistance by "failing to object to [his] career offender enhancement."  (D.E. 4 at PageID 39.)  He argues, specifically, that he "is not a career offender because his [2002] California possession charge" is not a felony but, rather "is a misdemeanor under California Proposition 47."  (*Id.*)  He posits that, because "Proposition 47 was already [effective] prior to [his federal] sentencing," counsel should have challenged the use of that conviction to qualify him as a career offender.  (*Id.* at PageID 40.)  Respondent argues that the claim is without merit.  The Government's position is well taken.

Counsel did not perform deficiently by failing to challenge the use of Williams' prior drug offense as a career offender predicate because that conviction was and is a felony. Proposition 47, which was passed in 2014, "reduced the penalties for certain drug and theft-related offenses and reclassified those offenses as misdemeanors rather than felonies."  *People v. Zamarripa*, 247 Cal. App. 4th 1179, 1182 (2016) (citing *People v. Sherow*, 239 Cal. App. 4th 875, 879 (2015)).  "It also added section 1170.18 to the Penal Code, which allows those previously convicted of felonies that were reclassified as misdemeanors under Proposition 47, to petition the court to have their felony convictions designated as misdemeanors."  *Id.* (citing *People v. Rivera*, 233 Cal. App. 4th 1085, 1091-92 (2015)).  Williams does not allege that he

petitioned for reclassification of his conviction. What is more, his offense was not for mere possession. Rather, it was for possession/purchase of cocaine base for sale. Under California law, that remains a felony. *See* Cal. Health & Safety Code § 11351.5 (providing penalties of "two, three, or four years" of incarceration for "every person who possesses for sale or purchases for purposes of sale cocaine base"); *Rodriguez v. Lizaraga*, No. CV1810500CBMPLA, 2019 WL 4364935, at *8 n.5 (C.D. Cal. July 23, 2019), *report and recommendation adopted*, No. CV1810500CBMPLA, 2019 WL 4344277 (C.D. Cal. Sept. 12, 2019) ("Petitioner's commitment offense—a violation of California Health & Safety Code § 11351.5—is not one of the enumerated offenses to which Proposition 47 applies.") (citing Cal. Penal Code § 1170.18(a)).

But even assuming that counsel performed deficiently, Petitioner cannot show that he was prejudiced by counsel's conduct. As indicated *supra*, Williams' criminal history contains at least two felony convictions apart from the controlled substance offense. Therefore, even without the California drug conviction, Petitioner qualified as a career offender. Claim 4 is without merit and is DENIED.

V.     Claim 5

Petitioner asserts that counsel provided ineffective assistance in the second appeal by "fail[ing] to supplement his pending appeal in light of" the Supreme Court's decision in *Davis*. (D.E. 4 at PageID 43.) Respondent argues that the claim is belied by the record. The Court agrees.

The firearm statute under which Petitioner was convicted provides in pertinent part that,

[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, *during and in relation to any crime of* violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm,

or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A)(i)-(iii) (emphasis added).

Section 924(c)(3) sets forth a "two-part definition" of crime of violence, "only one part of which need apply." *United States v. Robinson*, 708 F. App'x 272, 273 (6th Cir. 2017). "First, a crime of violence is a felony that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)). This "provision [is] sometimes called the elements clause[.]" *Taylor*, 142 S. Ct. at 2019. "Second, a crime of violence is a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Robinson*, 708 F. App'x at 273 (quoting 18 U.S.C. § 924(c)(3)(B)). This language is referred to as the statute's "residual clause." *Taylor*, 142 S. Ct. at 2019.

In 2019, the Supreme Court in *Davis* held that § 924(c)(3)'s residual clause "is unconstitutionally vague." *Davis*, 139 S. Ct. at 2336. It found that "the imposition of criminal punishment" under the clause impermissibly "depend[ed] on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326. Accordingly, "[a]fter *Davis*, a predicate offense qualifies as a crime of violence only if use of force is an element of the offense[.]" *United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 910 (2022).

Williams' attorney did not perform deficiently during the Second Appeal. The Supreme Court issued *Davis* on June 24, 2019, which was after the parties submitted their appellate briefs. A mere four days later, on June 28, 2019, counsel sought permission to supplement his brief to add a *Davis* claim. Therefore, counsel did exactly what Williams alleges he did not do.

Nor did counsel's conduct result in any prejudice. In its decision denying the appeal, the Sixth Circuit denied counsel's request for additional briefing, finding that "*Davis* does not affect Williams's appeal." (No. 1:15-cr-10015-JDB-1, D.E. 95 at PageID 387.) Therefore, even if counsel's performance was deficient, it was of no effect. Claim 5 is without merit and is DENIED.

VI.    *Taylor* Claim

Petitioner, through counsel, argues that (1) *Taylor* renders invalid his § 924(c) conviction; (2) assault under § 2113(d) is not a crime of violence because the least culpable form of assault includes insulting language; and (3) pursuant to *Borden v. United States*, 141 S. Ct. 1817 (2021), aggravated attempted robbery is not a crime of violence because it can be committed recklessly.

The Government argues that attempted Hobbs Act robbery is distinguishable from attempted bank robbery under §§ 2113(d) and (e), such that *Taylor* is inapposite; Petitioner's assault argument is without merit; and the *Borden* argument is a new claim that should be dismissed as untimely but is without merit in any event.

As discussed *supra*, an offense qualifies as a "crime of violence" under § 924(c) only if it satisfies the elements clause. *See Woods*, 14 F.4th at 552. To make that determination, courts use the "categorical approach." *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016) "Under the categorical approach, a court 'focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance.'" *Id.*

(quoting *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013)).  "Courts use a variant of this method—labeled (not very inventively) the modified categorical approach—when a prior conviction is for violating a so-called divisible statute, which sets out one or more elements of the offense in the alternative." *Denson*, 728 F.3d at 608 (internal quotation marks omitted) (quoting *Descamps v. United States,* 570 U.S. 254, 257 (2013)).  "'If the . . . statute could be violated in a way . . . constitute[ing] a crime of violence and in a way that would not, we look beyond the statutory language and examine' a limited set of documents 'to determine whether the conviction necessarily depended on the commission of a crime of violence.'"  *Rafidi*, 829 F.3d at 444 (quoting *United States v. Rede–Mendez*, 680 F.3d 552, 556 (6th Cir. 2012)).

For a statute to have as an element the use, attempted use, or threatened use of physical force, the force must be "*violent* force."  *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting "use of physical force" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i)).  Violent force is "force capable of causing physical pain or injury to another person." *Id.*

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery, 18 U.S.C. § 1951, is not a crime of violence under § 924(c)'s elements clause.  *Taylor*, 142 S. Ct. at 2020-21.  The Hobbs Act provides in pertinent part:

> [W]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. §1951(a).  Robbery under the statue is defined as:

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or

property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

§ 1951(b)(1).

Therefore, an element of completed Hobbs Act robbery is that the defendant takes property "by means of actual or threatened force." *Taylor*, 142 S. Ct. at 2020 (quoting 18 U.S.C. § 1951(b)).  For attempted Hobbs Act robbery, the prosecution must establish that "(1) The Defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)).  The Court held that the least culpable version of the attempt offense is the taking of a substantial step toward taking property by means of threatened force "where the actor does not actually harm anyone or even threaten harm." *Id.* The Court concluded that this version of attempted Hobbs Act robbery did not contain as an element the use, attempted use, or threatened use of physical force because it encompassed attempting to threaten.  *Id.* at 2020-21.  The Court set forth "[a] hypothetical [to] help[] illustrate the point":

> Suppose Adam tells a friend that he is planning to rob a particular store on a particular date.  He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest.  He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car.  Finally, he drafts a note— "Your money or your life"—that he plans to pass to the cashier.  The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response.  When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him.  It turns out Adam's friend tipped them off.

*Id.* at 2021.

Under those facts, the government "could win a lawful conviction against Adam for attempted Hobbs Act robbery," notwithstanding that Adam never communicated his threat to the intended victim.  *Id.*  Because the Court found that the least culpable version of the offense does

not require the use, attempted use, or threatened use of force, it held that attempted Hobbs Act robbery is not a crime of violence. *Id.*

Williams maintains that *Taylor's* ruling should extend to aggravated attempted bank robbery. In support, he argues that "[i]f Hobbs Act robbery is no longer a crime of violence to which 18 U.S.C. 924 (c) [sic] can 'attach,' after *Taylor*, . . . that . . . same principle should apply to attempted bank robbery. Both are attempted robberies. Both involve institutions. Both affect interstate commerce." (D.E. 36 at PageID 173.) He also submits that the elements of § 2113(a), the base offense, "can be committed without force, violence or intimidation[.]" (*Id.* at PageID 176.) He hypothesizes that "a person could simply walk (1) into a bank (2) towards [a] teller (3) hand the teller a note that reads 'give me the money' and (4) then leave." (*Id.*) "That person," he argues, "would have attempted bank robbery without force, violence or intimidation." (*Id.*)

The arguments are rejected. The Sixth Circuit has already held that the base offense in § 2113(a) is a crime of violence. *See United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016) (applying elements clause of U.S.S.G. § 4B1.2(a)). But the attempted version of the base offense does not contain an element of actual violence or intimidation. *See United States v. Wesley*, 417 F.3d 612, 618 (6th Cir. 2005). What is relevant in the present matter, however, is not whether attempted bank robbery is a crime of violence, but whether *aggravated* attempted bank robbery is. Petitioner does not approach that issue by engaging with the crux of *Taylor's* reasoning, *i.e.*, that an attempted Hobbs Act robbery can be committed by *attempting to threaten*, which is no force at all. *See Taylor*, 142 S. Ct. at 2020-21. Simply pointing out that attempted Hobbs Act robbery and aggravated attempted bank robbery are both attempt crimes involving institutions and affecting interstate commerce does not suffice. Petitioner has offered no meaningful rationale for extending *Taylor's* holding to the offense for which he was convicted. It

bears emphasizing that *Taylor* has not, simply by virtue of having held that one type of attempted robbery falls outside the definition of a crime of violence, doomed all attempted robberies to the same fate.[8]

Petitioner's second argument is that "assault" under § (d) is not a crime of violence. Citing to New Mexico law as an example, he argues that "the minimum level of force for a person to be guilty of assault—a component of 18 U.S.C. § 2113(d)—does not require threats or offensive physical contact."[9]  (D.E. 36 at PageID 176 (citing N.M. Stat. Ann. § 30-3-1)); *see also Rede-Mendez*, 680 F.3d at 557-58 (defendant's prior New Mexico conviction for aggravated assault "was not categorically a crime of violence under the enumerated-offenses prong of

---

[8]  Indeed, unlike attempted Hobbs Act robbery, the statutory provisions for aggravated attempted bank robbery require the Government to establish that the defendant *actually* committed an assault with a dangerous weapon, put another's life in jeopardy with a dangerous weapon, or kidnapped or killed another during an attempted robbery.  *See* 18 U.S.C. §§ 2113 (d), (e); *United States v. Kicklighter*, 192 F. Supp. 2d 788, 789-90 (E.D. Tenn. 2002) (§ 2113(d) does not extend to "*attempt* to assault and put in jeopardy the life of a person by use of a dangerous weapon" while attempting bank robbery; the provision does not encompass "one attempt interwoven in another attempt"); *see also United States v. Buck*, 23 F.4th 919, 928 (9th Cir. 2022) ("[W]e have interpreted §§ 2113(d) and 2114(a)'s life-in-jeopardy elements to require conduct that fits within the generic definition of a crime of violence."); *United States v. Johnson*, 899 F.3d 191, 204 (3d Cir. 2018) (§ 2113(d) qualifies as a crime of violence because "'assaulting' someone or putting a life in 'jeopardy by the use of a dangerous weapon,' meets the elements clause . . . .") (citation omitted); *cf. United States v. Perry*, 991 F.2d 304, 309 (6th Cir. 1993) (§ 2113(d)'s "puts in jeopardy . . . by the use of a dangerous weapon" requires that the offender have actually communicated the threat).

[9]  In his assault argument, Petitioner does not rely on *Taylor*'s central holding or reasoning—*i.e.*, that attempted Hobbs act robbery is not a crime of violence because it includes attempting to threaten.  Instead, he relies on *Taylor* only for the general proposition that a court "must determine the minimum level of force criminalized by 18 U.S.C. § 2113, and then resolve whether that conduct constituted the type of violent force required by the force clause of 18 U.S.C. § 924(c)(3)."  (D.E. 36 at PageID 175.)  That principle, which describes the categorical approach, predates *Taylor*.  *See Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (citing *Johnson,* 559 U.S. at 137).  The Government has not argued that Petitioner procedurally defaulted his assault argument or that it is untimely.  The Court therefore considers the merits of the issue.

U.S.S.G. § 2L1.2" because "the assault can be committed solely by using insulting language."). The Government maintains that the argument is without merit.  The Court agrees.

For purposes of a § 924(c) analysis, "[a]n assault is '(1) willfully attempting to inflict injury on another person or (2) threatening to inflict injury on another person, causing a reasonable apprehension of immediate bodily harm.'"  *Knight v. United States*, 936 F.3d 495, 500 (6th Cir. 2019) (noting that where a statute does not define assault, the court "give[s] the term its established common law meaning") (quoting *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017), *overruled on other grounds by Borden*, 141 S. Ct. at 1834). So defined, assault "require[s] at least some force or threatened use of force." *Id.*

In *Knight*, the Sixth Circuit addressed whether the petitioner's conviction for aggravated assault under 18 U.S.C. § 2114(a) is a crime of violence under § 924(c).  *Id.* at 498-501.  Section 2114(a) provides a maximum term of ten years imprisonment for "[a] person who assaults [a postal employee] with intent to rob, steal, or purloin . . . mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States[.]"  18 U.S.C. § 2114(a).  The maximum penalty is raised to twenty-five years "if in effecting or attempting to effect such robbery, [the offender] wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or [has] a subsequent offense[.]"  *Id.*  The Sixth Circuit held that the aggravated offense contains as an element the use, attempted use, or threatened use of force.  *Knight*, 936 F.3d at 500-01.  It reasoned that the additional statutory requirement that the assault must be committed by the use of a dangerous weapon "transform[s] less-than-violent physical force into violent physical force."  *Id.* (citing *Rede-Mendez*, 680 F.3d at 558).

Williams has not argued that *Knight*'s reasoning should not apply to assault by use of a dangerous weapon under § 2113(d), and the Court perceives no basis on which to hold that it does not apply.   Under *Knight*'s reasoning, assault by use of a dangerous weapon under § 2113(d) therefore has as an element the use, attempted use, or threatened use of force.   *See United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016), *as amended* (June 26, 2017) (holding attempted armed bank robbery is a crime of violence because, among other things, under § 2113(d)'s "robbery by assault by a dangerous weapon or device," "[t]he victim's fear of bodily harm is necessarily fear of violent physical force"); *cf. Verwiebe*, 874 F.3d at 261 (holding that 18 U.S.C. § 113(a)(3), which criminalizes assault with a dangerous weapon with intent to do bodily harm, "involves violent force because it proscribes common law assault with a dangerous weapon, not simple common law assault."); *Rafidi*, 829 F.3d at 445-46 (holding forcibly assaulting a federal officer and in the process "us[ing] a deadly or dangerous weapon . . . or inflict[ing] bodily injury" under 18 U.S.C. § 111(b) is a crime of violence).

Petitioner's final argument is "that since there is no mens rea listed in [§ 2113], the Court should not impute that it is knowing or premeditated conduct."  (D.E. 36 at PageID 176.) He reasons that "[i]f the 'default' mens rea is reckless, then—under *Borden*—the conduct is not a violent felony.  If it is not a violent felony, then 18 U.S.C. § 924(c) cannot 'attach' to it."  (*Id.*)

The Government maintains that the *Borden* argument is a new claim because a contention that the conduct proscribed in §§ 2113 (a), (d) and (e) can be committed recklessly is not a *Taylor* argument.  Respondent posits that the new claim is untimely under 28 U.S.C. § 2255(f), and is also without merit.

The *Borden* argument is a new claim.  As discussed herein, the Supreme Court in *Taylor* construed § 924(c)'s "use of force" requirement.  In *Borden*, it addressed "[t]he phrase 'against

another,' when modifying the [words] 'use of force[.]'" *Borden*, 141 S. Ct. at 1825 (analyzing the ACCA's elements clause).  The Court in *Borden* held that "'against another' . . . demands that the perpetrator direct his action at, or target, another individual."  *Id.*  "Reckless conduct," the Court concluded, "is not aimed in that prescribed manner."  *Id.*  Notably, Williams does not tie his *Borden* argument to his *Taylor* claim.

The new claim is untimely.  The Supreme Court's decision in *Borden* was issued on June 10, 2021.  Pursuant to 28 U.S.C. § 2255(f)(3), Petitioner was therefore required to raise a claim based on that decision no later than June 10, 2022.  *See United States v. Mills*, No. CR 16-20062, 2022 WL 17540996, at *1 (E.D. Mich. Dec. 8, 2022) (applying § 2255(f)(3) to *Borden* claim).  He did not do so, as he filed his Memorandum in Support on July 7, 2023.  *See id.* (§ 2255 petition asserting claim under *Borden* was untimely because it was filed more than one year after that decision was issued).  Williams does not argue any basis for excusing the late filing.  The *Borden* claim is therefore not properly before the Court.[10]

For the foregoing reasons, the Amended Petition and the Supplemental Claim are DENIED.  Judgment shall be entered for Respondent.

---

[10]  In any event, both the assault and the putting-in-jeopardy variants under § (d) require intentional conduct.  *See United States v. Beasley*, 438 F.2d 1279, 1282-83 (6th Cir. 1971) (noting that § 2113(d) is satisfied "[w]here a defendant is shown (a) to have created an apparently dangerous situation, (b) *intended* to intimidate his victim to a degree greater than the mere use of language, (c) which does, in fact, place his victim in reasonable expectation of death or serious bodily injury . . . .") (emphasis added); *see also Buck*, 23 F.4th at 929 ("It is well-settled that § 2113(d) requires 'that the robber *knowingly* made one or more victims at the scene of the robbery aware that he had a gun, real or not.'") (quoting *United States v. Henry*, 984 F.3d 1343, 1358 (9th Cir. 2021)).

To the extent that § (e) may be divisible between "kill[ing] any person" and "forc[ing] any person to accompany him without the consent of such person," *see United States v. Whitfield*, 695 F.3d 288, 307 (4th Cir. 2012) ("§ 2113(e) . . . create[s] separate offenses by the specification of distinct elements.") (internal quotation marks omitted), Petitioner has not explained how someone can accidentally or recklessly "force" a person to accompany him.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2)-(3).   A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

> If the petition was denied on procedural grounds, the petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition and the Supplemental Claim.  Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is therefore DENIED.[11]

IT IS SO ORDERED this 1st day of September 2023.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[11] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.